[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
CT Page 12627
The plaintiff wife, 43, and the defendant husband, 46, married on January 18, 1975 in Massachusetts. Three children have been born of the union, two of whom are still minors: Elizabeth Ann born October 18, 1980 and Ashley Lauren born October 24, 1983. The plaintiff has a teaching degree and certificate which was her occupation at the time of the marriage. Their first child Richard Edward was born November 6, 1975. The plaintiff has not returned to teaching. The defendant was a plumber when married. Shortly thereafter, he and his mother founded a business called Rosalia Gems, Inc., now located at 303 Fifth Avenue, New York, New York. The defendant was unsure whether he owned 20% or 30% of the capital stock. He is a minority stockholder and the vice-president, handling sales, marketing and related activities. The business creates and markets ladies' fashion rings. The business has supported defendant for the past 20 years.
He was able to give his wife $1,200.00 weekly from 1985 until the end of 1993 to run their household. The plaintiff had an au pair or a nanny to help for six or seven years until about 4 or 5 years ago. The plaintiff acknowledged that the defendant "provided well" for her and the family.
The parties purchased a home in Norwalk, Connecticut in 1983. The defendant presently owns 6 Highland Court, Norwalk which he values at $220,000.00 fair market. There is a mortgage balance of $16,400.00. The plaintiff values the contents of the home at $10,000.00.
The plaintiff is presently using a jointly owned 1993 Lexus automobile valued at $20,000.00, by the plaintiff. The defendant uses a leased 1995 Jeep Limited at a cost of $511.00 monthly.
In addition to the family home, the two other substantial assets are the defendant's IRA which he values at $558,602.00 and his minority interest in Rosalia Gems. His mother is no longer active in the business but received $75,000.00 in 1994. That sum was able to be paid as a result of a suit settlement the corporation received in June, 1994, (Plaintiff's Exhibit #32). The 1994 tax returns are on extension.
A balance sheet prepared without audit for management use (Defendant's Exhibit C), by the company accountant fails to list a CT Page 12628 life insurance policy which insures the defendant for $1,675,000.00 for the benefit of the corporation (Plaintiff's Exhibit #22). The policy has $12,000.00 cash value. Such an omission seriously compromises the balance sheet. Unchallenged is the fact Rose Bliss' loans from officers was listed as $195,917.78.
The plaintiff's expert, Larry C. Parkinson, CPA valued the defendant's 30% interest in the business at $170,740.00 as of August 31, 1994. (Plaintiff's Exhibit #36). In examining the data that was provided by the defendant, the expert did state that there was a downward trend in sales. This fact corroborates the defendant's claim that the stores he has dealt with in the past have changed their sales methods, that it is now much more difficult to place merchandise, that jobbers no longer will carry the line and that J.C. Penney is the only chain left as a customer.
The defendant was paid a salary of $130,000.00 in 1989, 1990, 1991; $132,500.00 in 1992 and $52,500.00 in 1993 (Plaintiff's Exhibits #3 and #7). In January 1994, he was paid $1,600.00 for three weeks and since January 28, 1994, he has been receiving a gross salary of $670.00. (Plaintiff's Exhibit #8).
The court concludes that the business was far more successful in the past than it is now.
Another issue is the joint account the defendant maintains with his mother, (Plaintiff's Exhibit #9) in Home Savings of America in New York City which contained a running balance exceeding $100,000.00. During 1993 two mutual funds were liquidated resulting in deposits into this bank account of $10,000.00, $109,000.00, and $100,000.00. The defendant testified many checks written were monies put into the corporation to keep it running. Without further documentation it is difficult for the court to accept the defendant's explanation at face value. The defendant was depositing his payroll checks into this account, (Plaintiff's Exhibit #10). Rose Bliss wrote a check for $85,000.00 on September 24, 1993 payable to Prudential Securities, Plaintiff's Exhibit #25).
Another active joint bank account was maintained by the defendant and his mother at Citibank (Plaintiff's Exhibit #11). In 1993 the balances ranged from $40,482.00 in January to $5,780.00 in December. A satisfactory explanation of this account was not forthcoming from the defendant. CT Page 12629
A financial affidavit sworn to by the defendant on May 17, 1994 omitted his interest in Rosalie Gems, Inc., listed his IRA as worth $17,138.00 and omitted any reference to the Home Savings of America account, (Plaintiff's Exhibit #15). A subsequent affidavit of defendant's dated November 7, 1994 listed the IRA as totaling $575,602.00.
The defendant's mother is holding 208 shares of Rochester Telephone Corporation as custodian for the defendant pursuant to the Florida Gifts to minors act, (Plaintiff's Exhibit #26).
The defendant's real estate appraisal found the fair market value of 6 Highland Court, South Norwalk to be $220,000.00 as of February, 1995, (Plaintiff's Exhibit #31).
The corporation paid the following sums in the "Rosalia Gems, Inc. Pension Trust":
 $ 50,000.00 on February 1, 1992 $100,000.00 on May 28, 1992 $ 60,000.00 on March 4, 1992
by checks drawn on the corporate checking account, (Plaintiff's Exhibit #37). The defendant's testimony that the plan administrator refused to furnish any documentation is not credible. The defendant asserts that the pension plan was terminated thereby explaining the large sum of money now held in the Prudential IRA.
The court, having reviewed the evidence in light of the statutory criteria, enters judgment dissolving the marriage with the following orders.
1. The plaintiff is awarded sole custody of the two minor children. The defendant is awarded reasonable visitation.
2. The defendant shall pay child support, based on his current net disposable income of $578.00 listed on his current financial affidavits of July 5 and July 6, or $215.00 weekly. A wage withholding order is entered.
3. The defendant shall continue to maintain medical coverage for the minor children. This order is subject to § 46b-84 (d), C.G.S. The parties shall divide equally any uninsured bill balances remaining after exhausting applicable insurance. CT Page 12630
4. The defendant shall pay the plaintiff the sum of $110.00 weekly as periodic alimony until the plaintiff's remarriage, the death of either party or further court order.[1]
5. The plaintiff is awarded the defendant's interest in 6 Highland Court, South Norwalk, Connecticut. If the defendant does not tender a quit claim deed in 30 days, transfer shall be effected pursuant to statute. The plaintiff shall assume the mortgage balance as is and an assumption clause may be recited in the quit claim deed. The contents of the house are awarded to the plaintiff as her sole property.
6. The pendente lite orders for alimony and child support shall remain payable to the date judgment is entered.
7. The plaintiff is awarded 50% of the defendant's IRA accounts and the court's order is based on the July, 1995 affidavits listing the value to be $575,602.00, without any subsequent withdrawals having been made. The plaintiff is also awarded 50% of the defendant's pension if it still exists. The court retains jurisdiction for execution of any QDRO of needed. The order anticipates this transfer to be a non-taxable event.
8. The defendant shall assign ownership of the Lexus Automobile to the plaintiff.
9. The defendant shall retain his stock in Rosalia Gems, Inc.; his personal injury claim; his bank accounts; his Rochester Telephone stock and any other assets not otherwise assigned.
10. The defendant shall be responsible for all debts listed on his financial affidavits.
11. The plaintiff shall be responsible for all debts listed on her financial affidavit.
12. The plaintiff is awarded an allowance to prosecute in the sum of $30,000.00 to defray her litigation expenses, payable in three equal parts in 30, 60 and 90 days from date of judgment.
Counsel for the plaintiff is directed to prepare the judgment file.
HARRIGAN, J. CT Page 12631